254

GEORGINA RODRÍGUEZ, known as GEORGINA FONT RODRÍGUEZ, Plaintiff and Appellant, *v.* PRUDENCIA UBIDES WIDOW OF FONT, as universal heir of FEDERICO FONT DELORT and her tutrix ENCARNACIÓN APONTE; DOMINGO NEGRÓN, Guardian *ad litem,* Defendants and Appellees.

No. 8076.  Argued January 21, 1941.—Decided March 18, 1941.

*Pedro M. Porrata* and *Rafael Hernández Matos,* for appellant. *Erasto Arjona Siaca,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The plaintiff in this case filed before the District Court of Ponce a complaint in filiation in which she alleged in synthesis that from 1889 until the middle of 1893, Federico

Font Delort lived in concubinage, publicly and openly and under the same roof as husband and wife with Francisca Rodríguez, who as a consequence of those relations conceived the plaintiff, giving her birth on April 23, 1892; that at the time of the conception as well as on the date of the birth, her parents were single and over twenty-one years of age and they could have married without dispensation; that from the moment of her birth until the death of Font, the plaintiff was continuously treated as a natural child as is proven by direct acts of Font and of his family. The plaintiff requests that she be adjudged the acknowledged natural daughter of Federico Font Delort, with all the rights awarded by law to acknowledged natural children; and that the defendants who may oppose the complaint be ordered to pay the costs.

The defendant, the widow and sole and universal testamentary heir of Font, answered the complaint and after specifically denying the essential allegations of the same, alleged as special defense ''that she has not accepted the inheritance either expressly or impliedly . . . , and that therefore, neither on the date of this case nor later at any time of the proceedings, nor now in filing this answer, has she had the character of sole and universal heir of Federico Font Delort, for which reason she is not bound to acknowledge the plaintiff as the acknowledged natural daughter of Federico Font Delort until such inheritance is accepted by her''. She also alleged that before accepting or declining the inheritance, she has the right to take time to deliberate; that the term granted by law for that purpose has not begun to run; that until the defendant accepts the inheritance, she does not inherit any obligation whatsoever of the deceased and is therefore not bound to acknowledge the plaintiff as his natural daughter, for which reason she is not a proper party defendant in this suit; and lastly that the suit filed has prescribed.

The case was heard and the lower court held in its opinion that "the evidence in regard to the complaint was solid, robust and convincing; that each and every one of the facts alleged in the complaint for filiation were proven in the most satisfactory manner"; and in regard to the alleged special defense, it said:

"The court, after considering the evidence and the briefs presented by both parties, is of the opinion and so it states, that the defendant, as the sole and universal heir of Federico Font Delort *has not accepted the inheritance* and therefore, that she is not bound to acknowledge the plaintiff as the daughter of the deceased and that for this reason only the complaint must be dismissed with costs, according to the mandatory provision of Act No. 69 of May 11, 1936."

To uphold the appeal filed by her, the plaintiff-appellant has stated the following assignments of error:

"I. The district court erred in deciding that the allegation on the part of an heir who is sued for an obligation of the deceased, that she is not bound to comply with the claim of the complaint because she has not decided before or after being sued whether or not to accept the inheritance, is a valid defense in law.

"II. Under the premise that we are mistaken in charging the commission of error number one to the district court, in that case it erred in holding that the intervention in the transactions to reach an agreement on the part of the designated heir and her affirmative defenses against the complaint, together with the rest of the facts proven by the plaintiff, do not constitute a sufficient acceptance of the inheritance for the purposes of the claim of the plaintiff in the present case.

"III. Finally, the plaintiff holds that the district court, under the facts and circumstances of the present case, erred in not holding that for the purposes of this suit of filiation, the defendant had no right to obtain judgment under her allegation that she had not decided as yet whether to accept or waive the inheritance."

As the legal question involved in the three assigned errors is one, we shall consider them together.

We will first summarize the proceedings had before the lower court. Federico Font Delort died on February 3, 1934, leaving no ascendants or descendants whether leg-

itimate or legitimized. In his will he left various legacies and designated his wife, the defendant, his sole and universal heir.

The original complaint filed on November 14, 1934, was addressed against each and everyone of the legatees and against the widow of the deceased as his universal heir. On January 25, 1935, with permission of the court, the plaintiff filed her first amended complaint in which some changes were made in regard to the parties defendant without changing the original theory of the suit. The summons of the defendant Prudencia Ubides widow of the deceased was served on November 15, 1934. She was notified through her tutor because she had been declared incapacitated by judicial order. Against the amended complaint motions to strike and demurrers were filed by the other defendants. On July 9, 1935, the plaintiff amended her complaint once more and the defendants were all summoned again. On July 23, the default of the defendant, Prudencia Ubides de Font, was noted. On September 12 of the same year, on motion of the plaintiff, the default of the defendant was set aside and the plaintiff was given permission to file a third amended complaint which was filed on that same day. In this complaint, the defendant, the widow of the deceased, is the only defendant. The defendant appeared on November 25, 1935, and moved to strike certain paragraphs from the complaint. The motion was granted and the court gave permission to amend the complaint, the fourth amended complaint then having been filed on December 10 of that year. On January 21, 1936, the defendant filed a demurrer for an alleged insufficiency of facts in the complaint. The demurrer was overruled and on February 21, 1936, the defendant filed a motion requesting a bill of particulars in regard to certain things "a knowledge of which is necessary to the defendant in order to answer the complaint." The particulars requested referred to alleged acts of acknowledgment of the plaintiff as his natural daughter by Federico Font Delort and the dates of the same.

Said motion was granted in part and the plaintiff, on March 30, 1936, filed the bill of particulars. Finally, on April 7, 1936, the defendant answered in the manner in which we have stated at the beginning of this opinion.

At the hearing of the case, in order to prove the acceptance of the inheritance by the defendant, Prudencia Ubides, the plantiff offered the following evidence:

(a) The deed of the inventory of the inheritance, executed on June 11, 1934, by the testamentary executrix, wherein Pedro Juan Ubides appeared as attorney-in-fact of Encarnación Aponte, the tutrix of Prudencia Ubides, the defendant.

(b) A receipt for the inheritance tax paid by the testamentary executrix on October 26, 1934.

(c) The testimony of Attorney Porrata, attorney of the plaintiff, to the effect that he conferred with the other heirs who were represented by the Attorney Arjona Siaca to make a division of the inheritance; that Arjona drew up a draft for a deed of partition and that said attorney never told him that the defendant Prudencia Ubides had not accepted the inheritance.

(d) Draft for a deed of partition which is not signed by anyone.

The defendant, to uphold the fact that she had not accepted the inheritance, presented the following evidence:

Georgina Ubides, testamentary executrix, testified that since the death of the deceased, she is in possession of and administers the property of the inheritance; that neither the defendant nor any of her tutors has taken possession of the property; that she as executrix, has paid the taxes; that she gives the defendant a monthly sum for her expenses, which sum is never in excess of one-half of the income; that she paid the inheritance tax as a result of the agreement entered into according to the draft for a deed of partition; that Encarnación Aponte, tutrix of the defendant, took part in that agreement and agreed to the same; that there was an agreement between the parties and it was necessary to present the draft for a deed to the court for approval and it was thought that the court would not admit it if a receipt

for the payment of the inheritance tax was not accompanied and for that reason she made the payment; and that the agreement was not carried into effect because a discussion arose between two legatees in regard to a lot.

Domingo Negrón, testamentary tutor of the defendant, testified that neither the defendant nor her tutrix has taken possession of the property of the inheritance and that he did not take part in the making of the inventory nor in the draft for partition.

Erasto Arjona Siaca, attorney for the defendant, testified testified that neither the defendant nor her tutrix has taken was executed before Notary Rafael Atiles Moréu; that various certified copies of the will were made, one of which was delivered to Georgina Rodríguez, the plaintiff; that through an error of the clerk, in the copy which was delivered to the plaintiff, in the ninth clause, Juan Ciriaco Ubides and Encarnación Aponte, father and mother in law of the testator, were designated heirs and not his wife Prudencia Ubides; that the witness has never been authorized to accept the inheritance nor to bind the defendant, Prudencia Ubides; that the latter has never accepted the inheritance; and that the witness, simply as attorney of the testamentary executrix, tried to reach an agreement between the parties for an extra-judicial partition.

██ We agree with the lower court that neither the making of the inventory by the testamentary executrix, nor the payment by her of the inheritance tax, nor the receipt by the incapacitated heir of one half of the rents produced by the property left by the testator, imply an acceptance of the inheritance by the defendant. Sections 953 and 1325 of the Civil Code (1930 ed.)

██ Said Section 953 provides that a pure and simple acceptance of an inheritance may be express or implied. An express acceptance must be made in a public or private instrument. "Implied acceptance is one made by acts which neces-

sarily imply a wish to accept *or acts which no one should have a right to execute except in the capacity of an heir"*. (Italics supplied.)

In his commentaries to Section 999 of the Spanish Civil Code which is the same as Section 953 of our Code, Manresa says:

"For an implied acceptance, acts of an heir or performed in his name, are required. Act means human activity: factual doing, written manifestations and even words which embody action. Cesare Lozana, however, says with reason that in order that the effects of an implied acceptance may be the same as those of the express acceptance, the statute must necessarily refer to acts which, because of their purpose and meaning, will offer the same security of a mature consideration that is involved in a written document wherein the quality of an heir is assumed, and that therefore, the acts to which the statute refers must be only those which by themselves will produce a legal effect with respect to he who performs them. . . .

"Now then: the acts performed by the heir must be such as will *necessarily* denote the intention or the will to accept. If they can have a different meaning or can be interpreted in another way, there is no acceptance, and of course, those acts which can be lawfully executed in a capacity different to that of heir, such as executor, possessor, partner, lessee, etc., can be classified as extraneous and independent of the will to accept. That is why Section 999 adds that before the acts which involve an acceptance may presume necessarily the will to accept, it is a requisite that said acts can not be lawfully performed unless in the capacity of an heir.

" .    .       .      .       .       .       .      .      .

"No matter how clear and conclusive the text of the statute may seem, this matter is one of the most difficult which may arise in practice. Everything is relative and the special circumstances of each case have a great bearing. It is necessary to deduce the will or intention of the heir from his acts.

"It must not be thought thereby that we have to do with a simple question of fact. The facts are the basis: from them we must draw the legal rule. The court, if a suit is brought, will apprise, following the rules of sound criticism, which facts must be found proven, and these, of course, cannot be subject to review by courts of cassation: the facts, of course, are those which have been declared proven and it cannot be alleged that it was otherwise. But from

those facts, is an implied acceptance shown? Do they necessarily denote the will to accept, and could they be performed only in the capacity of an heir? This is a question of law which can be viewed from a different angle by the Supreme Court, and this is why a writ of cassation will issue against the judgment on appeal.

"The law, in view of this difficulty, by way of explanation, determines that the acts of mere conservation or provisional administration do not, as a general rule, imply the acceptance of the inheritance and expressly points out in Section 1000, other acts which presume said acceptance." Vol. 7, pp. 354, 355, (1903 ed.)

Are the acts executed by the tutors of the defendant, in her name, before and during the proceedings in this case, of such a nature that they imply or suppose an intent to accept the inheritance? Did the defendant have a right to execute said acts without been invested with the character of an heir?

We will accept, as the lower court accepted, that the appearance of Pedro Juan Ubides as attorney-in-fact of his mother, Encarnación Aponte, dative tutrix of her daughter, the defendant, Prudencia Ubides, did not imply an acceptance of the inheritance by the defendant. We cannot accept, however, that the intervention, in the drawing up of the draft for a deed of partition of the inheritance, of the dative tutrix of the defendant does not imply or suppose an intention to accept the inheritance in the name of the incapacitated heir.

From the record it appears that said project was drawn up by Attorney Arjona Siaca, who was the legal representative of all the legatees with the exception of the plaintiff, and also of the defendant; that at the meeting held in order to reach an agreement as to the partition of the inheritance, all the interested parties were present, among them the plaintiff, the dative tutrix and the testamentary tutor of the defendant; that after an agreement was reached, it could not be carried out because differences arose among two legatees in regard to the adjudication of one of the properties. Said draft was offered in evidence by the plaintiff. There was no objection on the part of the defendant. Her attorney accepted

it and stated that it was he who drew it up in accordance with the agreement of the interested parties. Among the clauses of said draft, the following one appears:

"FIRST.—If other properties appear belonging to this testament-ary inheritance which through ignorance, inadvertence, error or omis-sion had not been included in this partition they should be divided among the interested parties in the following manner: in regard to the legatees, completing their legacies until they reach the testament-ary amount, *and in regard to any residue which there may be, it will be delivered and adjudicated to the widow Prudencia Ubides as the sole and universal heir designated by the ninth clause of the will which is the basis of this partition.*" (Italics supplied.)

If the draft of a deed of partition is examined closely, it will be seen that the inventory in which it is based, is the same which was made by the testamentary executrix on June 11, 1934.

The original complaint of filiation filed by Georgina Rodrí-guez as the basis for her claim of her father's inheritance was addressed against Prudencia Ubides, widow of Font, as sole and universal heir of the deceased and against several other persons as legatees under the will of Font Delort. After a series of incidents—motions to strike, petitions for bills of particulars, demurrers, etc.—whose decision covered a period of time from November 14, 1934 until December 10, 1935, the date of the fourth amended complaint, all the legatees were eliminated as defendants and there remained Prudencia Ubides de Font, the present defendant, as the only defendant in her capacity as sole and universal heir. Upon being notified of the fourth amended complaint, the defend-ant again adopted dilatory tactics filing a motion to strike, a motion to reconsider the order denying the motion to strike, and a demurrer to the complaint. All these were decided against her and the defendant prayed that the plaintiff be ordered to specify "*when* and in *what manner* Federico Font Delort wrote to Georgina Rodríguez and addressed her as his natural daughter, that is to say, whether it was by a

letter or any other document and the date of each document or letter''; and she alleged that this data was absolutely necessary in order to be able to answer the complaint. The motion being granted and the bill of particulars filed, the defendant appeared on April 7, 1936, and answered the complaint, not to deny her character of sole and universal heir of her husband, nor to allege her repudiation of the inheritance but to deny each and every one of the allegations of the complaint which tended to set up the filiation of the plaintiff and to allege finally what she could have alleged in answer to the original complaint, that is, that she has not accepted the inheritance, neither expressly nor impliedly.

In our opinion, all the acts of the dative tutrix of the defendant necessarily imply and presuppose the intention to accept the inheritance. If it was the intention of the defendant to decline the inheritance, what object could the first clause of the draft of the deed of partition, *supra*, have, whereby was adjudicated to her, ''as sole and universal heir'', the residue of any property which did not appear in the inventory and which were not included in the partition? The insertion of said clause is an act which presupposes the intent to accept the inheritance.

We have already stated that the suit for filiation was filed against Prudencia Ubides as heir and not as a simple legatee. Against Prudencia Ubides, as legatee, the plaintiff has no cause of action, since the suit for filiation when it is not filed during the life of the alleged father, must be filed against the heirs of the latter because the heirs are the ones who in accordance with Section 610 of the Civil Code (1930 ed.) ''succeed the deceased in all his rights and obligations by the mere fact of his death.'' If it was the intention of the defendant to decline the inheritance, she should have limited her answer to a denial of her character of universal heir, alleging her waiver of the inheritance or her intention of waiving it. If she was not, in reality, at the moment of answering the complaint—more than two years after the

death of the testator and knowing of, and having accepted the inventory of the property—in a condition to decide whether she would accept or decline the inheritance, she could have, in accordance with the provisions of Section 959 of the Civil Code, asked the court to set a term for her to deliberate. She did not do so. She preferred to answer. And in so doing she placed herself in the position of and assumed the character of universal heir which was the only position which could give her a right to litigate with the plaintiff in regard to her alleged condition of natural daughter of the deceased, Font Delort. The fact that she answered the complaint traversing the allegations tending to establish the filiation, implies or presupposes an intention to accept the inheritance. What object could the denial of the alleged filiation have if it was not to defend the inheritance and stop it from reaching the hands of the natural child of the deceased?

In the case of *Amy* v. *Aponte et al.*, 29 P.R.R. 134, the complaint was filed against the heirs of Palés who had signed as surety a promissory note executed by Aponte in favor of Amy. On appeal before this Court, the defendants sustained that the complaint was insufficient because it did not allege that the defendants had accepted the inheritance of Palés with or without benefit of inventory and that it was an error of the lower court to overrule the demurrer. Upon affirming the judgment against the appellant heirs, this Court, at pp. 137–138, stated as follows:

"Undoubtedly if the heirs do not accept, or repudiate, the inheritance from their ancestor, they do not succeed to all of his rights and obligations; but from this rule the deduction cannot be drawn that a plaintiff who sues the heirs on an obligation of their ancestor must allege in the complaint that they accepted the inheritance.

"The plaintiff must allege only that the defendants are the heirs, for, according to Robles Pozo in his commentaries on the Civil Code, 'at the moment of the death of the ancestor he is substituted by his heirs or successors and an acceptance is not necessary, for this is presumed to be a consequence of the succession, the repudiation by

the heirs amounting to a renunciation of a right which they already have and possess and to an abandonment and rejection of a capacity already acquired; or the heirs may expressly accept it conditionally according to the rights conferred by law.'

"Refusal to accept the inheritance is an exception favoring the heirs in order to exempt them from the fulfillment of the obligations in which they succeed their ancestor by reason of his death, and as an exception it is a defense for the defendants to plead. *Dapena v. Estate of Dominicci,* 12 P.R.R. 64.

"On March 2, 1896, the Supreme Court of Spain (79 *Jurisprudencia Civil,* 414), in an appeal from a money judgment against certain minors represented by their mother wherein error was alleged in the violation of sections 922 and 1005 of the Spanish Civil Code, held that the sections cited were applicable to the case because the appellants, who had been adjudged to pay a debt incurred by their father, were his forced heirs and it had not been suggested or attempted to prove that they had renounced the inheritance, nor even that they had accepted it conditionally."

In accordance with the rule established in said case, the plaintiff was not bound to allege—and therefore, not bound either to prove—that the defendant had accepted the inheritance. It was the presumptive usufructuary and testamentary heir, the defendant herein who was required to comply the obligation of the deceased Font Delort to recognize the plaintiff as his natural daughter, who had to allege and prove that she was not an heir because she had declined the inheritance and that she was therefore not bound to comply with the obligations of the deceased. The defendant did not allege in her defense that she had declined the inheritance. Her only defense, as inacceptable as it is insufficient, was her own indecision, alleging in substance that notwithstanding the fact that two years and two months had elapsed since the death of Font Delort, she had not as yet accepted or repudiated the inheritance.

The same legal question raised in *Amy* v. *Aponte et al., supra,* was again submitted to the consideration of this Court in *Banco Comercial de P. R.* v. *García,* 51 P.R.R. 712. Suit was filed against the heirs of Mrs. García for the collection

of a promissory note. They did not answer the complaint and appealed from a judgment *pro confesso* against them. On appeal they alleged that the complaint was insufficient because it did not allege that the defendants had accepted the inheritance and that the lower court had erred in not dismissing it. In dismissing the appeal, this Court, after affirming in an unequivocal manner the terms of its decision in *Amy* v. *Aponte et al.*, stated as follows:

"The strongest argument advanced by Manresa in support of his theory is the provision contained in section 1005 of the Spanish Civil Code, equivalent to section 959 of our Civil Code, 1930 ed. According to this section, should a third person in interest bring suit to compel the heir to accept or repudiate the inheritance, the judge shall fix a period, not exceeding thirty days, within which the heir shall declare his intention, warning him that should he not do so, the inheritance shall be deemed accepted. And we add, what else can be required than an action established against the heirs claiming from them the payment of an obligation contracted by their predecessor in interest? The law grants ten days to the defendants to set up their allegations, and there is nothing to prevent them from petitioning the court for reasonable term within which to accept or repudiate the inheritance. Monserrate F. de García died in 1930, and this complaint appears to have been filed on February 21, 1931.

"Section 959 provides that once the suit has been brought, the term to be granted for making a declaration shall not exceed thirty days. As may be seen, a peremptory term is involved, and it is no hardship on the defendants to make such declaration where they are required to perform an obligation contracted by their predecessor in interest. The acceptance of the inheritance may be either express or implied, and if the heir should have performed any act implying such acceptance, such act must necessarily be within his knowledge, and the third person in interest should not be expected to allege and prove acts of which perhaps he has no knowledge or which he is not bound to know. Every material allegation must be proved in order to establish a cause of action, and if the plaintiff does not know that inheritance has been accepted, he cannot be required to allege facts which he will be unable to prove for want of the necessary information. To hold otherwise would be to authorize the heir to evade easily, by remaining silent, the performance of an obligation of his

predecessor in interest, since he can protect and exempt himself from every responsibility by establishing the fact that he had not accepted or that he had repudiated the inheritance.

. ''As aptly said by Manresa, where the inheritance is accepted the legal effects of the acceptance retroact to the moment of the death of the predecessor in interest. If the person who judicially claims from the heir the fulfilment of an obligation contracted by his predecessor in interest is compelled to prove the acceptance of the inheritance, he might easily fail in his endeavor for want of the necessary information. If subsequently the acceptance of the inheritance by such heir is proven, the creditor might perhaps find himself in a difficult situation in order to enforce his rights, since he had failed in his purpose, for want of evidence, in a previous action against the heir in question. It is true that under section 959 a third person in interest may demand that the heir either accept or repudiate the inheritance, but if by the filing of the complaint this end is attained, it seems unnecessary to compel him to comply with such requisite as a condition precedent to establish his claim. A mere question of procedure is involved which, in our opinion, does not destroy the principles enunciated by the commentator Manresa. If the heir accepts the inheritance he becomes answerable for the obligation contracted by his predecessor in interest. If he repudiates it, no liability attaches to him. It seems advisable to state that the provision of section 959 is applicable where the heir is to accept or repudiate the inheritance. It might happen that he has accepted it without the knowledge of the third person in interest, in which case he would be requested to do a thing that he has already done. This might happen, because the third person in interest is not bound to know of the fact of the acceptance of the inheritance whether express or implied which, as we have already stated, is rather within the knowledge of the heir. The error assigned must be overruled.''

Considering that the acts executed in the name of the defendant presuppose an intent to accept the inheritance; that said acts induced the plaintiff to file her complaint against the universal heir in the belief that she had accepted the inheritance; and that the heir presumptive when suit was filed against her, did not allege as a defense her repudiation of the inheritance, we must decide and we do decide that for the purposes of the claim of filiation of the plaintiff, the

defendant accepted the inheritance and became liable to comply with the obligation, which the deceased had as natural father of the plaintiff. This acceptance should be considered as made under benefit of inventory in accordance with Section 947 of the Civil Code (1930 ed.). 7 Manresa 311–12; 6 Sánchez Román 1769–1770, *Estudios de Derecho Civil;* 17 Scaevola 407. ■ A dative tutor may accept an inheritance in the name of the minor or incapacitated heir under benefit of inventory and for this he does not need judicial authorization. It is logical that if he can accept it expressly, he can also accept it impliedly by acts executed in the name of the heir which imply the intent to accept. The tutor may not be held to have accepted impliedly without benefit of inventory because even for an expres acceptance without said benefit of inventory he would need judicial authorization.

We have studied the evidence adduced by the plaintiff to establish her filiation and we agree with the lower court that the evidence is "solid, robust and convincing" and that all the facts alleged in the complaint have been satisfactorily proven.

The judgment appealed from, because it is contrary to law, must be reversed and another is rendered in its stead whereby the plaintiff Georgina Rodríguez, known as Georgina Font y Rodríguez, is held to be the natural acknowledged daughter of Federico Font Delort with all the rights granted by law to acknowledged natural children and the marginal note of said acknowledgment should be made on the certificate of birth of the plaintiff in the civil registry wherein said certificate is recorded. The defendant is ordered to pay the costs of this suit.

Mr. Justice Todd, Jr., took no part in the decision of this case.